# IN THE ST. LOUIS COUNTY CIRCUIT COURT
# STATE OF MISSOURI

**Brendan Abbott**, individually and on behalf of all others similarly situated,

        Plaintiff,

- against -

**Golden Grain Company**,

        Defendant

Case No. _____

**SERVE DEFENDANT AT:**
**[CT CORPORATION SYSTEM**
**208 S. LaSalle St. Suite 814**
**Chicago, IL 60604]**

Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Golden Grain Company ("Defendant") manufactures, labels, markets, and sells Rice Pilaf Original Mix under the Near East brand ("Products").

## I.   CONSUMERS VALUE BIGGER PACKAGING

2. Consumers purchasing everyday items such as low-cost groceries are likely to exhibit a low degree of care.

3. The average consumer spends 13 seconds making an in-store purchasing decision.

4. Faced with a large and a smaller box, consumers choose the larger box, thinking it is a better value.

5. Studies show approximately 80 percent of consumers do not look at label information, especially the net weight and servings.

6. Though a reasonable consumer does not expect a package to burst at the seams, they expect the amount of product bears a reasonable relationship to the size of the package.

EXHIBIT A

## II. EMPTY SPACE IN DEFENDANT'S RICE PILAF ORIGINAL MIX BOXES

7. The Product is sold in a box 16.2 centimeters high.

8. Despite its height, the box is filled to 5.5 centimeters with rice pilaf.



9. The result is that the package is 33% full of Rice Pilaf, with 66% empty space other than a thin "flavoring package."[1]

10. Consumers are misled into believing that they are purchasing substantially more rice pilaf than they receive.

## III. NO LEGITIMATE REASONS FOR EMPTY SPACE

11. Federal and identical state regulations recognize that deceptive packaging can be

---

[1] The flavoring packages in the Products are themselves too large, and do not justify boxes only *one third* full of the advertised contents.

2

EXHIBIT A

used to the detriment of consumers, but also that there are valid reasons ("safe harbors") for why foods may have what appears to be excess space, or slack-fill. *See* 21 C.F.R. § 100.100 ("Misleading containers.").

12. For slack-fill to be deemed nonfunctional, the empty space cannot be due to one of the six recognized safe harbors. 21 C.F.R. § 100.100(a)(1)-(6) ("Safe Harbors").

13. The slack-fill in the Product is nonfunctional because it is not covered under any of these safe harbors.

14. First, the rice pilaf does not require more than 60% empty space to protect it from damage, as it is not at risk of breakage. *See* 21 C.F.R. § 100.100(a)(1) ("Protection of the contents of the package").

15. This is in contrast to potato chips, which contain a significant amount of air to prevent the contents from being crushed and the chips destroyed.

16. In fact, rice pilaf would be better protected in a smaller box, because the excess air and space in the box allows other items to press against this portion of the box, possibly causing it to "pop" or be damaged.

17. Second, there are no requirements of the machines used to enclose the rice pilaf that would leave over 60% of empty space. *See* 21 C.F.R. § 100.100(a)(2) ("The requirements of the machines used for enclosing the contents in such package").

18. These machines can use less cardboard and contain the same amount of rice pilaf.

19. Third, no issue exists with respect to the rice pilaf settling during shipping and handling. *See* 21 C.F.R. § 100.100(a)(3) ("Unavoidable product settling during shipping and handling").

20. Rice pilaf is dense, and no settling occurs after being filled in the box.

21. Fourth, the packaging is not required to perform a specific function, i.e., play a role in the preparation or consumption of the rice pilaf. *See* 21 C.F.R. § 100.100(a)(4).

22. Once a customer pours the rice pilaf into a bowl for cooking, the box's role is finished.

23. Fifth, the box is not a "reusable container," nor part of the presentation of the rice pilaf and does not have value in proportion to the value of the rice pilaf, independent of its function to hold the rice pilaf. *See* 21 C.F.R. § 100.100(a)(5).

24. This is confirmed because the box is discarded after, and not intended to be filled with other items.

25. The box does not contain any re-sealable top or special coatings which would facilitate its further use.

26. Sixth, no inability exists to increase the amount of rice pilaf or to reduce the size of the box to a minimum size necessary to accommodate required food labeling or perform another purpose. *See* 21 C.F.R. § 100.100(a)(6).

27. There is no need for a tamper resistant device, and the Product is sold without one.

28. Defendant can reduce deception by adding a prominent fill line or transparent window to the front label.

29. To the extent the front of the Product contains any "lines," which may indicate to consumers where the contents come up to, the only line is beneath "Rice Pilaf Mix" and above "Original."

30. However, this line is twice as high as the actual level of rice pilaf.

31. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

32. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

33. As a result of the false and misleading representations, the Product is sold at a premium price, approximately $2.33 per 6.09 OZ, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the excessively large and underfilled box.

Parties, Jurisdiction & Venue

34. Plaintiff Brendan Abbott is a citizen of Missouri, and resides in this judicial circuit.

35. Defendant Golden Grain Company is a California corporation with a principal place of business in Chicago, Cook County, Illinois.

36. The members of the class or classes Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, in thousands of stores and online, across the States covered by Plaintiff's proposed classes.

37. The Product is available to consumers from grocery stores, big box stores, convenience stores, and online.

38. Venue is appropriate in this Court because a substantial part of the events or omissions giving rise to the claims occurred here, including Plaintiff's purchase, transactions and/or use of the Product and awareness and/or experiences of and with the issues described here.

39. Plaintiff purchased the Product at locations including Walmart Supercenter 1202 S. Kirkwood Rd., Kirkwood, Missouri, 63144, between October 7, 2022 through October 10, 2022, among other times.

40. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, and

instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

41. Plaintiff viewed the container and expected it would contain more rice pilaf than it did and that the contents would be greater than they were.

42. Plaintiff was disappointed when he opened the box and saw the box was mostly empty, and the rice pilaf did not even fill half the box.

43. Plaintiff bought the Product at or exceeding the above-referenced price.

44. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

45. Plaintiff would not have purchased the Product if he knew the box would be mostly empty or would have paid less for it.

46. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's use of an excessively large box.

47. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its attributes and/or composition.

48. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar products raising identical issues – including several varieties and flavors of rice, rice pilaf, quinoa, couscous and taboule ("Similar Products") – because he is unsure whether those representations are truthful.

## Class Allegations

49. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

Electronically Filed - St Louis County - October 17, 2022 - 01:56 PM

**Missouri Class:** All persons in the State of Missouri who purchased the Product during the statutes of limitations for each cause of action alleged; and

**Consumer Fraud Multi-State Class**: All persons in the States of Alaska, Montana, Wyoming, Arkansas, Idaho, Kentucky, West Virginia, Kansas, Iowa, Mississippi, Nebraska, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

50. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

51. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

52. Plaintiff is an adequate representative because his interests do not conflict with other members.

53. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

54. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

55. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

56. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Missouri Merchandising Practices Act ("MMPA"),</u>
<u>Mo. Rev. Stat. § 407.010, *et seq.*</u>

57. Plaintiff incorporates by reference all preceding paragraphs.

58. Plaintiff purchased the Product for his own, personal use.

Electronically Filed - St Louis County - October 17, 2022 - 01:56 PM

59. Plaintiff and all members of the proposed class are "persons" and the Products are "merchandise" as those terms are defined under the MMPA

60. Defendant designed the box so consumers like Plaintiff would expect that it contained more rice pilaf than it did.

61. The container misleads consumers because it is only 33% filled with rice pilaf, having nearly 66% empty space, other than a thin "flavoring packet."

62. Plaintiff relied on the size of the box to expect it would contain more rice pilaf than it did.

63. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

64. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

65. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

66. The members of the Consumer Fraud Multi-State Class were misled similarly to Plaintiff with respect to their expectations the Product would contain more rice pilaf than it did.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose</u>
<u>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

67. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it contained an amount of rice pilaf that had a reasonable relationship to the packaging in which it was presented.

68. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, distributed product descriptions, and targeted digital advertising.

69. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

70. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained an amount of rice pilaf that had a reasonable relationship to the packaging in which it was presented.

71. Defendant's representations affirmed and promised that the Product contained an amount of rice pilaf that had a reasonable relationship to the packaging in which it was presented.

72. Defendant described the Product so Plaintiff believed it contained an amount of rice pilaf that had a reasonable relationship to the packaging in which it was presented, which became part of the basis of the bargain that it would conform to its affirmations and promises.

73. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

74. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for transparent labeling and a commitment to putting customers first.

75. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

76. Plaintiff has provided written notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties, specifically sending, on or before October 12, 2022, a Notice Letter to Defendant at its business address, set forth *supra.*

77. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, industry bodies, competitors, and consumers, to its main offices, and by consumers through online forums.

78. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

79. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained an amount of rice pilaf that had a reasonable relationship to the packaging in which it was presented.

80. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it contained an amount of rice pilaf that had a reasonable relationship to the packaging in which it was presented, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

81. Defendant had a duty to truthfully represent the Product, which it breached.

82. This duty was non-delegable, based on Defendant's holding itself out as having special knowledge and experience in this area, custodian of the Near East brand, recognized for

the highest quality products.

83. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency, and putting customers first, that it has been known for.

84. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

85. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

86. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

### Fraud

87. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained an amount of rice pilaf that had a reasonable relationship to the packaging in which it was presented.

88. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

### Unjust Enrichment

89. Defendant obtained benefits and monies because the box contained significantly less rice pilaf than expected by Plaintiff, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary damages, including statutory and/or punitive damages and interest pursuant to statutory and common law claims;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Respectfully submitted,
/s/ Daniel F. Harvath
Harvath Law Group, LLC
75 W Lockwood Ave Ste 1
Webster Groves MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com

Sheehan & Associates, P.C.
Spencer Sheehan (*Pro Hac Vice* forthcoming)
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com