UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDAN ABBOTT, individually and on behalf of others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-01240-SRC |
| | ) | |
| GOLDEN GRAIN COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>Memorandum and Order</u>**

Disappointed that he bought a box of rice pilaf that wasn't filled to the brim, Brendan Abbott alleges that Golden Grain deceived and cheated him. Abbott seeks to vindicate the rights of his fellow rice-pilaf purchasers whom he claims also have been deceived. Hoping to defend its packaging practices, Golden Grain Company moves to dismiss Abbott's suit.

**I.      Background**

The Court first addresses what materials it considers on this motion to dismiss. Abbott's Complaint turns on Golden Grain's product packaging, but he includes in his Complaint only portions of that packaging. In response, Golden Grain includes the entirety of the packaging.

"Though 'matters outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss, documents 'necessarily embraced by the complaint' are not matters outside the pleading." *Enervations, Inc. v. Minnesota Mining and Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (quoting *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003)). Because the whole of the rice pilaf package is "necessarily embraced by the complaint," this Court will consider it in deciding whether Abbott's complaint survives Golden Grain's motion to

dismiss.  Further, Abbott does not object to Golden Grain's inclusion of or references to the entire product packaging.  *See* Doc. 9 at p. 12.

With these principles in mind, the Court accepts the following facts as true for the purposes of this motion to dismiss.  Golden Grain manufactures, labels, and sells a food product branded "Rice Pilaf Original Mix."  Doc. 1-1 at ¶ 1.  Golden Grain packages this product in a box containing rice pilaf and a seasoning packet.  But it only fills about one-third of the box with rice, leaving its packages mostly empty.  *Id.*  The front of each box, however, prominently discloses that it weighs 6.09 ounces.  *Id.* at ¶ 8.  And the side of each box displays a fill line with text stating, "grain mix filled to this line."  Doc. 8-1.  The side of the box also states, "[t]his package is sold by weight not by volume."  *Id.*  The back of the box states that the rice pilaf mix amounts to three cups of food, once prepared.  *Id.*

Abbott purchased one such box at a Walmart Supercenter, Doc. 1-1 at ¶ 39, believing it held more rice pilaf than it actually did, *id.* at ¶ 41.  Feeling "disappointed" in the amount of food in the rice pilaf package, *id.* at ¶ 42, Abbott filed this putative class action just a week after his purchase.  *Id.* at ¶¶ 39, 64–66.  Specifically, Abbott accuses Golden Grain of violating the Missouri Merchandising Practices Act, breaching various warranties, making negligent misrepresentations, committing fraud, and unjust enrichment.  Doc. 1-1.  Golden Grain moves to dismiss.  Doc. 7.

## II.    Standard of review

Under Rule 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief."  To meet this standard and survive a Rule 12(b)(6)

motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The Court must make all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court must "liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.  "A pleading that merely pleads 'labels and conclusions' or a 'formulaic recitation' of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010) (citation omitted).  Although courts must accept all factual allegations as true, they are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 677–78.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.  Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*.  This "context-specific" task requires the court to "draw on its judicial experience and common sense." *Id*. at 679, 682.

III.     **Discussion**

A.       **MMPA claim**

Abbott's chief claim against Golden Grain concerns the Missouri Merchandising

Practices Act ("MMPA").  The MMPA gives consumers a private right of action to recover

damages from sellers:

> Any person who purchases or leases merchandise primarily for personal, family or
> household purposes and thereby suffers an ascertainable loss of money or property,
> real or personal, as a result of the use or employment by another person of a method,
> act or practice declared unlawful by section 407.020, may bring a private civil
> action in either the circuit court of the county in which the seller or lessor resides
> or in which the transaction complained of took place, to recover actual damages.

Mo. Rev. Stat. § 407.025.1(1).  In turn, § 407.020 of the MMPA prohibits "[t]he act, use or

employment by any person of any deception, fraud, false pretense, false promise,

misrepresentation, unfair practice or the concealment, suppression, or omission of any material

fact in connection with the sale or advertisement of any merchandise in trade[.]"  So, to state a

claim under the MMPA, Abbott must show that he "(1) purchased merchandise from [Golden

Grain]; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of

money or property; (4) as a result of an act declared unlawful under the [§ 407.020]."  *Tucker v.

General Motors LLC*, 58 F.4th 392, 397 (8th Cir. 2023) (quoting *Vitello v. Natrol, LLC*, 50 F.4th

689, 693 (8th Cir. 2022)).

Over the years, courts have construed these elements in a way that makes MMPA claims

especially resilient to motions to dismiss.  In *Murphy v. Stonewall Kitchen, LLC*, the Missouri

Court of Appeals found that the plaintiff adequately alleged the ascertainable-loss element of an

MMPA claim by alleging that the defendant falsely labeled its product "all natural," when it

contained an allegedly artificial ingredient, as revealed by the product's ingredient label.  503

S.W.3d 308, 310 (Mo. Ct. App. 2016).  The plaintiff alleged that "[b]y affixing such a label to

4

the packaging of the Mix, Defendant is able to entice consumers like Plaintiff to pay a premium

for [the supposed] 'all natural' products." *Id.* at 313–14.  The Missouri Court of Appeals

deemed these allegations sufficient to survive a motion to dismiss.  *Id.*  The defendant, for its

part, argued that the plaintiff failed to allege a deceptive practice, but the state court rejected this

argument:  "The parties should have been allowed to proceed with discovery and allow these

fact[ual] questions to be resolved by a motion for summary judgment, if appropriate, or by a

jury, not by a motion to dismiss." *Id.* at 312 (citation omitted).

Extending *Murphy* to cases of allegedly underfilled containers, some federal district

courts have decided not to dismiss MMPA claims supported by relatively sparse allegations of

loss and deception.  For instance:

> Plaintiff's allegations of ascertainable loss are analogous to those held sufficient in
> *Murphy*.  Plaintiff alleged that the boxes were opaque and that the size of the boxes
> led her to believe there was more candy in them than they actually contained.  She
> alleged that the value of the products she purchased was less than the value of the
> products as represented by [the] size of the boxes.  She alleged that product
> purchasing decisions are heavily dependent on the packaging, and on the package
> dimensions in particular, and that consumers tend to choose a larger package over
> a smaller one, thinking it is a better value.  Plaintiff has sufficiently alleged
> ascertainable loss for purposes of withstanding the motion to dismiss and that the
> alleged loss was the result of the packaging.

*Hawkins v. Nestle U.S.A Inc.*, 309 F. Supp. 3d 696, 706 (E.D. Mo. 2018); *see also White v. Just

Born, Inc.*, No. 2:17-cv-04025-C-NKL, 2017 WL 3130333, at *9 (W.D. Mo.  July 21, 2017)

(employing the same reasoning as in *Hawkins*); *Bratton v. The Hershey Co.*, No. 2:1-cv-4322-C-

NKL, 2017 WL 2126864, at *8 (E.D. Mo. May 16, 2017) (same).  These cases also rejected

arguments that the plaintiffs failed to adequately allege deceptiveness.  Citing *Murphy*, they held

that the deceptiveness of a seller's packaging "is a question of fact." *Hawkins*, 309 F. Supp. 3d

at 705; *White*, 2017 WL 3130333, at *4, *see also Bratton*, 2017 WL 2126864, at *4.

But substantial amendments to the MMPA call into question the applicability of these cases.  In 2020, the Missouri Legislature amended the MMPA to place more stringent requirements on plaintiffs raising MMPA claims by adding the following:

> A person seeking to recover damages shall establish:
> (a) That the person acted as a reasonable consumer would in light of all circumstances;
> (b) That the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; and
> (c) Individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty.

§ 407.025.1(2).  The 2020 amendments also empower courts to dismiss as a matter of law cases that previously may have made it past the motion-to-dismiss stage:

> A court may dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer.

*Id.*  The placement of this language in the statute raises a question about whether it operates as an independent clause, or whether it also applies to clauses (a), (b), and (c) of 407.025.1(2).  The Court applies scope-of-subparts canon of construction, which provides that "[m]aterial within an indented subpart relates only to that subpart; material contained in unindented text relates to all the following or preceding indented subparts."  Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 156 (2012).  Because this "may dismiss" clause appears in the as-passed bill (Missouri SB 591) without indentation but *after* the indented sub-subsections (a), (b), and (c), the clause applies to each of sub-subsections (a), (b), and (c).  S. 591, 100th Gen. Assemb., 2d Reg. Sess. (Mo. 2020).  While it would have little effect on the Court's ultimate decision here, the Court finds that the "may dismiss" clause applies to clauses (a), (b), and (c) of 407.025.1(2).

No Missouri or Eighth Circuit case has addressed the significance of the three requirements added by the 2020 amendments to the MMPA.  The single Eighth Circuit case reviewing a complaint originally filed after the 2020 amendments lists the four elements set by § 407.025.1(1) as the elements of an MMPA claim, but that case did not consider whether the amended § 407.025.1(2) adds further elements.  *See Tucker*, 58 F.4th at 397.  Neither the briefing before the Eighth Circuit nor the district court's decision in that case mentions § 407.025.1(2).  Memorandum of Law in Support of General Motion to Dismiss Class Action Complaint, *Tucker*, 58 F.4th, No. 21-2698; Plaintiffs' Opposition to General Motors LLC's Motion to Dismiss, *Tucker*, 58 F.4th, No. 21-2698; General Motors' Reply in Support of Motion to Dismiss Class Action Complaint, *Tucker*, 58 F.4th, No. 21-2698; Brief of Plaintiffs-Appellants, *Tucker*, 58 F.4th, No. 21-2698; General Motors LLC's Principal and Response Brief, *Tucker*, 58 F.4th, No. 21-2698; Reply Brief of Plaintiffs-Appellants, *Tucker*, 58 F.4th, No. 21-2698; *Tucker v. General Motors LLC*, Case No. 1:20-CV-254-SNJL, 2021 WL 2665761 (E.D. Mo. June 29, 2021).  Therefore, *Tucker* simply did not address the 2020 amendments.

However, Judge Schelp of the United States District Court for the Eastern District of Missouri recently applied the amendments in a similar case.  *Bell v. Annie's, Inc.*, Case No. 4:22-cv-01367-MTS, 2023 WL 3568623, at *3–6 (E.D. Mo. May 18, 2023).  The Court in *Bell* held that the amendments add elements that a plaintiff must plead and prove.  *Id.* at *3 (first citing 34 Robert H. Dierker & Richard J. Mehan, Mo. Practice Series: Personal Injury & Torts Handbook § 29:2 (2022 ed.) (explaining § 407.025.1 "now requires pleading and pro[ving]" these additional requirements); and then citing Mo. Approved Jury Instr. (Civil) 39.01–02 (8th ed.) (explaining when § 407.025.1(2)'s requirements do and do not apply)).  The Court finds this reasoning and analysis of *Bell* persuasive, and correct.

Accordingly, the Court holds that § 407.025.1(2) adds three elements to the original four set by the pre-amendment MMPA.  The pre-amendment statute stated that plaintiffs "may bring a private civil action . . . to recover actual damages" if they satisfied the four original elements listed in § 407.02—i.e., that the plaintiff (1) purchased merchandise (2) for personal, family or household purposes, and (3) suffered an ascertainable loss of money or property (4) as a result of an act declared unlawful under § 407.020.  § 407.025.1(1) (effective to Aug. 28, 2020).  On top of that, the 2020 amendments added three *more* elements that "[a] person seeking to recover damages shall establish"—i.e., (1) that the person acted as a reasonable consumer would in light of all circumstances; (2) that the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; (3) and that individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty.  § 407.025.1(2) (effective Aug. 28, 2020).  Abbott fails to adequately plead both the pre-amendment ascertainable-loss element, § 407.025.1(1), and each of the three post-amendment elements, § 407.025.1(2).

### 1. Abbott fails to plead the pre-amendment ascertainable-loss element.

"The ascertainable loss element incorporates Missouri's 'benefit of the bargain' common law fraud remedy."  *Goldsmith v. Lee Enterprises, Inc.*, 57 F.4th 608, 615 (8th Cir. 2023) (citing *Vitello*, 50 F.4th at 963) (*Goldsmith* and *Vitello* involved the pre-amendment version of the MMPA).  Although the 2020 amendments significantly altered the MMPA's private right of action, nothing in its text unsettles the pre-amendment cases connecting the ascertainable-loss element to the benefit-of-the-bargain rule.  *See* § 407.025.  "The benefit of the bargain is 'the difference between the value of the product as represented and the actual value of the product as received.'"  *Goldsmith*, 57 F.4th at 615 (quoting *Thompson v. Allergan USA, Inc.*, 993 F. Supp.

2d 1007, 1012 (E.D. Mo. 2014)).  This longstanding rule means that "[t]he proper measure of damages . . . is the difference between the actual value of the property at the time of the sale and what its value would have been if the representation had been true."  *Kendrick v. Ryus*, 123 S.W. 937, 939 (Mo. 1909) (citation omitted).

So, to prove the ascertainable-loss element of an MMPA claim, Abbott must show that Golden Grain represented its rice pilaf in a way that made it appear to have more value, i.e., more product, than it actually did.  And this would require Abbott to show some discrepancy between Golden Grain's representations and the actual product.  Abbott says he examined the box and made his purchase based on information on the package and Golden Grain's other marketing materials.  *Id.* at ¶ 40.  He further alleges that the rice pilaf's value "was materially less than its value as represented by Defendant," that Golden Grain sold its rice pilaf "at higher prices than it would have in the absence of this misconduct," and that "the Product is sold at a premium price, approximately $2.33."  *Id.* at ¶¶ 31–33.

The Court accepts as true well-pleaded factual allegations—but it does not credit Abbott's speculation on the interplay between the price and size of Golden Grain's packages.  *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Golden Grain represented the package's contents accurately by disclosing on the front of each package the weight of its contents.  Doc. 1-1 at ¶ 8.  Although Abbott's complaint only displays the box's front, Golden Grain's submissions show a fill line on the side of each package, a disclosure that Golden Grain sells by weight and not by volume, and a disclosure of volume of the prepared rice pilaf.  Doc. 8-1.  The front of Golden Grain's boxes say that they contain 6.09 ounces of rice pilaf, *id.* at ¶ 8, and Abbott does not allege that they contain, or that he received, anything less than 6.09 ounces of rice pilaf, *id.* at ¶ 33.  Nor does he

9

allege that the other disclosures on the box somehow led him to believe that the box contained anything more than 6.09 ounces of rice pilaf. *Id.* at ¶¶ 7–9.

Indeed, Abbott does not dispute Golden Grain's statements about the other disclosures on its package. He only says that box did not display the fill line *prominently* enough—apparently a subjective view. *See* Doc. 9 at p. 12. While Abbott mentions in his warranty claim that Golden Grain somewhere promised that its product "would be defect-free," and that he regards the empty space in its packages as a defect, this opinion, too, is subjective. *Id.* at ¶ 70. In sum, Abbott does not plausibly allege that Golden Grain represented that its package would contain more than 6.09 ounces of rice pilaf.

Because Golden Grain did not explicitly state that its packages contained more than 6.09 ounces of rice pilaf, Abbott must argue that the size of Golden Grain's boxes counts as an implicit representation of their contents. Given that each package disclosed its net weight, contained a fill line, and stated that it was sold by weight and not by volume, Abbott's case depends on the proposition that—in deciding whether a package falsely represents its contents— the size of a package overshadows the explicit disclosures on the package. More generally, Abbott would need to show that package designs that implicitly, or perhaps possibly, suggest a false impression of a product override explicit written disclosures, under the caselaw applying the benefit-of-the-bargain rule.

Yet, Abbott cites no Missouri or Eighth Circuit case to support such a proposition. *See* Doc. 9. Indeed, *Vitello* supports the opposite. 50 F.4th at 693–94 (granting the defendant's motion for summary judgement). In that case, the plaintiff complained that the defendant's product did not work as a substitute for Adderall. *Id.* at 693. The defendant advertised that its product would improve memory and concentration. *Id.* at 691. However, "[a]t the time Vitello

purchased it, Cognium's packaging clearly stated it was not intended to treat any disease," and thus "'[a]s represented,' . . . Cognium was a nutraceutical that would *not* treat ADD." *Id.* at 694 (citation omitted).  So, the plaintiff could not succeed under the benefit-of-the-bargain rule: "Vitello cannot . . . establish ascertainable loss by showing that the product failed to do something it never purported to be capable of." *Id.*  Likewise, Abbott cannot establish ascertainable loss by showing that the product failed to contain more rice pilaf than it purported to contain.

Abbott asks the Court to follow cases that, as noted, do not involve or apply the 2020 amendments to the MMPA and thus, at best, have questionable precedential value here.  Doc. 9 at p. 13.  These cases held that plaintiffs could adequately plead ascertainable loss by alleging that they believed a package would contain more food product than it did, that the package misrepresented its contents, and that large packaging attracts consumers.  *Hawkins*, 309 F. Supp. 3d at 706; *White*, 2017 WL 3130333, at *9.  Under this reasoning, consumers can plead that a seller deprived them of the benefit of their bargain simply by making conclusory statements about the deceptiveness of a package and by alleging that they subjectively thought they bargained for a different type or quantity of product, even if their understanding of the bargain flies in the face of express disclosures to the contrary.

The 2020 amendments undermine, if not completely gut, this reasoning.  The Court cannot simply rely on a plaintiff's statement that he subjectively made conclusions about a package's contents that the package's express disclosures contradict because § 407.025.1(2) requires that the plaintiff act as a reasonable consumer.  Under the benefit-of-the-bargain rule, courts compare the actual product with the product as represented by the seller, not the product as conjured or hoped for by the consumer.  *See Kendrick*, 123 S.W. at 939.  Besides the cases

following *Murphy*, the Court is not aware of any case that compares a product's actual value to a buyer's subjective, package-disclosure-defying expectations to measure the benefit of the bargain.

Courts must assess at the motion-to-dismiss stage whether the plaintiff acted as a reasonable consumer.  *See* § 407.025.1(2).  In this case, a reasonable consumer would understand that the package promised 6.09 ounces of rice pilaf and no more.  How?  By reading the package. *See Bell*, 2023 WL 3568623, at *4 (finding that "reasonable consumers do review product labels" and "Missouri law recognizes that reasonable consumers do review product labels.") (first citing *Savalli v. Gerber Prods. Co.*, 0:15-cv-61554-WJZ, 2016 WL 5390223, at *1 (S.D. Fla. Sept. 20, 2016); and then citing Richard A. Merrill & Earl M. Collier, Jr., "Like Mother Used to Make": An Analysis of FDA Food Standards of Identity, 74 Colum. L. Rev. 561, 596 (1974)).  Whether his disappointment was feigned for the purpose of propagating litigation or real, Abbott got what he bargained for and fails to plausibly allege an ascertainable loss.

### 2.     Abbott fails to plead the first two post-amendment elements.

For similar reasons, Abbott cannot satisfy the first two post-amendment elements:  (1) that he acted as a reasonable consumer would in light of all circumstances and (2) that the method, act, or practice declared unlawful by § 407.020 would cause a reasonable person to enter into the transaction that resulted in damages.  § 407.025.1(2)(a)-(b).  Because Abbott does not state any special circumstances that separate him from the average consumer, the issue of Abbott's reasonableness in light of all circumstances and the issue of what a reasonable consumer would do present essentially the same question. So, the Court addresses these issues together.

Abbott ignored the disclosure printed prominently on Golden Grain's package.  *See* Doc. 1-1 at ¶ 8 (displaying an image of the rice pilaf package with the package's weight printed on the front).  Any reasonable consumer would have realized from even gently shaking the box that Golden Grain had not filled the package to the brim.  *Id.* (showing that Golden Grain only filled roughly one-third of its package with rice pilaf mix).  The package's several other disclosures resolve any ambiguity about the package's contents.  *See* Doc. 8-1.  Abbott's pleadings demonstrate that he did not "act[] as a reasonable consumer would in light of all circumstances" and that the size of Golden Grain's boxes would not "cause a reasonable consumer to enter into the transaction that [supposedly] resulted in damages."  § 407.025.1(2).

While Abbott does not address whether § 407.025.1(2) adds to the elements he must plead, he offers five arguments addressing whether he acted reasonably and whether Golden Grain's packaging would cause a reasonable person to enter into the transaction that would result in damages.  First, according to Abbott, "[c]onsumers purchasing everyday items such as low-cost groceries are likely to exhibit a low degree of care"; "[t]he average consumer spends 13 seconds making an in-store purchasing decision"; and "[s]tudies show approximately 80 percent of consumers do not look at label information, especially the net weight."  Doc. 1-1 at ¶¶ 2, 3, 5.  So, Abbott says that the average consumer—and presumably the reasonable consumer—would not notice the net weight disclosure on Golden Grain's boxes.  *Id.*  But a reasonable consumer will notice if a package weighs roughly one-third of what he or she expected and investigate further to resolve the discrepancy between the package's size and its weight.  *See id.* at ¶ 9 (stating that "the package is 33% full of rice pilaf, with 66% empty space").  How?  Again, by reading the package.  *See Bell*, 2023 WL 3568623, at *4–5 ("[T]he Court concludes that the package's repeated statements that it contained five .8-ounce pouches—and had a net weight of

13

four ounces—was more than enough to clear up any possible confusion of a reasonable consumer.").

Second, Abbott says that Golden Grain's underfilled boxes violate FDA regulations and that consumers trust that food products will comply with FDA regulations.  Doc. 9 at p. 13.  Abbott makes detailed allegations regarding the FDA's prohibition against excess empty space in packaging and how Golden Grain's rice pilaf packages allegedly violate that prohibition.  *Id.* at ¶¶ 11–27.  Next, Abbott cites *Bratton* for the proposition that consumers may reasonably assume that packaging does not violate FDA regulations.  Doc. 9 at p. 13.  *Bratton* says that "the existence of the Federal prohibition against slack-fill [or excess empty space] supports the reasonableness of a consumer's belief that the package of candy he purchases will not have 29% or 41% non-functional slack-fill."  *Bratton*, 2017 WL 2126864, at *4.  While an FDA prohibition against excess empty space may "support[]" the belief that a package contains no excess empty space, Abbott does not explain how FDA regulations can set the standard for what a state legislature deems misleading, and necessary to state a cause of action, under a state consumer-protection law.

Third, Abbott argues that the law does not make consumers responsible for determining whether the size of a box is inconsistent with a net weight disclosure printed on the box.  Doc. 9 at pp. 10–11.  To support this proposition, Abbott cites *Webb v. Dr Pepper Snapple Group, Inc.*, 4:17-00624-CV-RK, 2018 WL 1955422, at *3 (W.D. Mo. Apr. 25, 2018) (citation omitted) (holding that *Murphy* rejected the proposition that "as a matter of law, . . . consumers are responsible for evaluating whether some information on a package label is inconsistent with other information on the label").  However, both *Webb* and *Murphy* preceded the 2020 amendments to the MMPA, *see Webb*, 2018 WL 1955422 (decided 2018); *Murphy*, 503 S.W.3d

14

(decided 2016), and Abbott does not explain how these cases could apply to the post-amendment elements, Doc. 9 at pp. 10–11.  Even if *Murphy* could apply here, a ruling on whether a consumer has the duty to compare a box's promise that it contains "all natural" ingredients with the box's ingredient label does not decide whether a consumer may reasonably take a box's size as the sole indication of the quantity of goods in the box.  *See Murphy*, 503 S.W.3d at 310.

Fourth, Abbott says that faulting him for failing to notice the net-weight disclosure would "not serve the purpose of the MMPA."  Doc. 9 at p. 11 (quoting *Hawkins*, 309 F. Supp. 3d at 705 (holding that the MMPA "is both written and construed broadly to serve its purpose of consumer protection")).  However, *Hawkins* predates the 2020 amendments.  309 F. Supp. 3d 696 (decided in 2018).  The post-amendment statutory requirement that consumers demonstrate that they acted reasonably defines, or perhaps better said confines, the purpose and scope of the MMPA.  *See* § 407.025.1(2).  Rather than applying vague "purposes" of a statute, the Court applies the plain text of the MMPA amendments.

Fifth, Abbott argues that if a net-weight disclosure should dispel any misconception created by an oversized box, then the FDA's prohibitions on excessive empty space become "meaningless."  Doc. 9 at p. 11.  However, the FDA does not have authority to supply the elements of a state consumer-protection claim, and Abbott makes clear elsewhere that he does not intend to enforce the FDA's regulations.  *Id.* at p. 13.

In sum, Abbott's various arguments that Golden Grain's packaging would deceive a reasonable consumer each fail.  Abbott either failed to read or blithely ignored:  (1) the plain language of the package that disclosed its weight and fill line, and (2) that Golden Grain sold the product by weight not volume.  Applying both the statutory text of the MMPA and its "judicial

experience and common sense," the Court finds that Golden Grain's packaging would not deceive a reasonable consumer. *See Iqbal*, 556 U.S. at 682.

### 3.    Abbott fails to plead the third post-amendment element.

Turning to the final post-amendment element of an MMPA claim, Abbott fails to establish "[i]ndividual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty." § 407.025.1(2). Abbott says that Golden Grain sold its product at a higher price than it would have in the absence of its supposed misconduct. Doc. 1-1 at ¶¶ 32–33. Abbott got exactly what he bargained for, 6.09 ounces of rice pilaf, and he cannot plausibly plead otherwise. Because Abbott fails to plead that he suffered ascertainable loss, that he acted reasonably, that the packaging would deceive a reasonable consumer, and because he fails to allege well-pleaded facts supporting a reasonably certain calculation of damages, the Court dismisses Abbott's MMPA claim.

### B.    Warranty claims

Abbott argues that Golden Grain breached several different kinds of warranties by selling underfilled boxes. Doc. 4 at pp. 9–10. However, to succeed, Abbott must satisfy the notice requirement of Mo. Rev. Stat. § 400.2-607(3)(a), which requires that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." This provision governs each of Abbott's warranty claims, because these claims, by definition, seek a remedy for Golden Grain's alleged "breach" of warranty. *Id.*; *see also Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. 1993) (adding an alteration to the text of § 400.2-607(3)(a) to emphasize its application to breach of warranty claims). Because Abbott does not plead facts showing that he satisfied the notice requirement, *see* Doc. 1-1, the Court dismisses Abbott's warranty claims.

16

Missouri courts interpret this prerequisite of warranty claims as requiring pre-suit notice, *Vogt v. K&B Auto Sales, LLC, et al.*, Case No. 4:22-cv-00385-SRC, 2022 WL 4103838, at *4 (E.D. Mo. Sept. 8, 2022), to the immediate seller, *Keene*, 855 S.W.2d at 369.  This last point stands firmly established under § 400.2-607(3)(a):  "the buyer is only under a duty to notify the immediate seller, not the manufacturer."  *Id*. (citing *Ragland Mills*, *Inc. v. General Motors Corp.*, 763 S.W.2d 357, 361 (Mo. App. 1989)); *see also Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965, 974 (W.D. Mo. 2021) (noting that "cases continue to cite *Keene* favorably" (citations omitted)).

The parties dispute whether Abbott satisfies these requirements.  Although Abbott arguably gave sufficient notice to Golden Grain, Abbott does not claim to have given notice to the immediate seller.  Doc. 9 at p. 15; *see also* Doc. 1-1.  Golden Grain complains that Abbott's notice to it "was not sufficient under Missouri law."  Doc. 8 at p. 12.  Abbott retorts that the jury should decide questions of the sufficiency of notice, that Abbott owes no notice to Golden Grain, and that the notice it gave to Golden Grain meets the "key purpose[s] underlying the pre-suit notice requirement."  Doc. 9 at pp. 14–15 (alteration in original).  To this, Golden Grain responds that, even if Abbott is right that he only needs to notify the immediate seller, he has failed to do so.  Doc. 11 at p. 7.

Abbott's failure to notify the immediate seller of his complaints bars him from any remedy, and his notice to Golden Grain does not cure this mistake.  First, the text of Mo. Rev. Stat. § 400.2-607(3)(a) requires notice to the immediate seller, and this subsection applies to this case.  "Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach *notify the seller* of breach or be barred from any remedy."  *Id.* (emphasis added).  Abbott emphasizes the precedent holding that, in the context of

this statute, "seller" only refers to the "immediate seller."  Doc 9 at p. 13–14 (quoting *Browning*, 539 F. Supp. 3d at 974 (citation omitted)).  Abbott seems to assume that, because he did not file suit against the immediate seller, this statute does not apply to him.  *Id*.  To the contrary, "[t]he plaintiff cannot escape the notice requirement even though it chose to sue only the manufacturer."  *Ragland Mills*, 763 S.W.2d at 361.  Nothing in the statute conditions the requirement of pre-suit notice to the immediate seller on whom a buyer chooses to sue.  Mo. Rev. Stat. § 400.2-607(3)(a).

Second, Abbott's notice to Golden Grain does not satisfy the notice requirement.  Abbott maintains that, because Golden Grain has had the opportunity to negotiate a settlement and has not done so, the "key purpose[s]" of the pre-suit requirement have become moot.  Doc. 9 at p. 15.  However, Mo. Rev. Stat. § 400.2-607(3)(a) does not hinge its requirements on whether they will promote any particular policy goal.  The pre-suit requirement applies regardless of whether it properly promotes negotiated settlements.  *Budach v. NIBCO, Inc.*, Case No. 2:14-cv-04324-NKL, 2015 WL 6870145, at *4–5 (W.D. Mo. Nov. 6, 2015) (stating that court's view that the pre-suit notice requirement is "unfair" and "a trap," but still requiring the buyer to give notice when the seller allegedly had independent notice of its product's defects).  Ergo, the pre-suit notice requirement applies to Abbott and remains unsatisfied.  The Court denies Abbott's warranty claims for failure to comply with Missouri's notice requirements.

### C.    Negligent-misrepresentation claim

Missouri courts have recognized the tort of negligent misrepresentation as set forth in the Restatement of Torts Second, Section 552.  *See, e.g.*, *AAA Excavating, Inc. v. Francis Const., Inc.*, 678 S.W.2d 889, 893 (Mo. Ct. App. E.D. 1984).  Abbott asserts a negligent-misrepresentation claim, Doc. 4 at pp. 10–11, but Golden Grain replies that Abbott runs afoul of

the economic-loss doctrine, Doc. 8 at p. 14.  This doctrine bars relief in negligence claims for

purely economic loss, *Rockport Pharm., Inc. v. Digital Simplistics*, Inc., 53 F.3d 195, 198 (8th

Cir. 1995), with a few exceptions established by Missouri law, *Dannix Paintings, LLC v.*

*Sherwin-Williams Co.*, No. 4:12 CV 01640 CDP, 2012 WL 6013217, at *2 (E.D. Mo. Dec. 3,

2012).  Abbott agrees with Golden Grain about the economic-loss doctrine's implications but

says that he can bypass the doctrine "because the '[Golden Grain] Company h[eld] itself out as

having special knowledge and experience.'"  Doc. 9 at p. 16 (citations omitted).  The parties

have not cited any case supporting this assertion—yet persuasive contrary authority exists. *See*

*Dannix Paintings*, 2012 WL 6013217, at *2 (listing the exceptions to the economic-loss

doctrine).  Therefore, the economic-loss doctrine bars Abbott's negligent-misrepresentation

claim.

###### D.    Fraud claim

Golden Grain alleges that Abbott's complaint "is devoid of any facts that might support

an inference that Golden Grain's intent was to defraud."  Doc. 8 at p. 15.  In its reply, Golden

Grain adds that Abbott "fails to plead a 'false representation'" and fails to cite any case

indicating that underfilling a box could count as a false representation under state law.  Doc. 11

at p. 10.  According to Missouri law:

> In order to make a submissible case of fraudulent misrepresentation, a plaintiff must
> prove nine essential elements:  (1) a representation; (2) its falsity; (3) its materiality;
> (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's
> intent that it should be acted on by the person and in the manner reasonably
> contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the
> hearer's reliance on the representation being true; (8) the hearer's right to rely
> thereon; and (9) the hearer's consequent and proximately caused injury.

*Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007).

Abbott received the benefit of his bargain, as explained above.  *See supra* Section III.A.  Golden Grain represented its product accurately by explicitly and prominently disclosing the weight of its package's contents.  Doc. 1-1 at ¶ 8.  Because Abbott does not plausibly allege that Golden Grain falsely represented its rice pilaf, his allegations cannot support a fraud claim.

Likewise, an adequately pleaded fraud claim would require an injury, *Hess*, 220 S.W.3d at 765, but Abbott suffered no injury.  He paid $2.66 for a 6.09-ounce box of rice pilaf and received 6.09-ounces of rice pilaf.  *See Kendrick*, 123 S.W. at 939 (the proper measure of damages in fraud is the benefit-of-the-bargain rule); *Larabee v. Eichler*, 271 S.W.3d 542, 548 (Mo. 2008) (Missouri uses the benefit-of-the-bargain rule to measure damages in fraudulent misrepresentation cases).  Because Abbott cannot plausibly allege a false representation, it cannot plausibly allege that Golden Grain knew of its supposed false representation, that Golden Grain intended consumers to act on the supposed false representation, or that Abbott did not know of the supposed false representation.  *See Hess*, 220 S.W.3d at 765.  Therefore, Abbott fails to plead any of these elements, much less plead them with particularity.  *See* Fed. R. Civ. P. 9(b).  For all of these reasons, the Court dismisses Abbott's fraud claim.

### E.      Unjust-enrichment claim

Abbott's claim for unjust enrichment suffers from defects similar to those that plague his other claims.  "An unjust enrichment claim requires a showing that:  '(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances.'"  *Binkley v.*

*American Equity Mortgage, Inc.*, 447 S.W.3d 194, 199 (Mo. 2014) (quoting *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. 2011)).

Abbott cannot plausibly allege that Golden Grain retained a benefit under inequitable or unjust circumstances when Abbott received the 6.09 ounces of rice pilaf he bargained for.  *See supra* Section III.A; *see also Ringier Am., Inc. v. Land O'Lakes, Inc.*, 106 F.3d 825, 829 (8th Cir. 1997) ("First, LOL was not unjustly enriched—it received printing services as part of the benefit of its bargain with RMA, a bargain LOL did not breach."); *In re Baycol Prods. Litig.*, 596 F.3d 884, 892 (8th Cir. 2010) (citing *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) for the proposition that "[t]here is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected," and concluding that, because the plaintiff "received the benefit of his bargain," his unjust-enrichment claim failed.).  The Court accordingly dismisses Abbott's unjust-enrichment claim.

## IV.    Conclusion

The Court grants Golden Grain's [7] Motion to Dismiss and dismisses Abbott's claims with prejudice.

So Ordered this 13th day of June 2023.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

21